**UNITED STATES v. LUER PACKING CO.**
Civ. 13811.

United States District Court
S. D. California, Central Division.
Feb. 24, 1953.

Walter S. Binns, U. S. Atty., Clyde C. Downing and James C. R. McCall, Jr., Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Hallack W. Hoag, Los Angeles, Cal., for defendant.

YANKWICH, Chief Judge.

Upon consideration of the plaintiff's motion for judgment on the pleadings and/or for summary judgment, which motion was heard and submitted on February 9, 1953, upon the record and admissions on file, and the affidavit of James C. R. McCall, the Court finds the following facts, to wit:

Findings of Fact.

1. That on February 20, 1946, the defendant Luer Packing Company (sometimes called "Luer" hereinafter) applied to Reconstruction Finance Corporation (sometimes called "R.F.C." hereinbelow), in writing on RFC Form DS–T–69, for payment to it of a livestock slaughter special profit subsidy in the sum of $35,257.86, pursuant to the provisions of Sections 2, 3 and 4 of Directive 90 as promulgated by the Stabilization Administrator on December 4, 1945, 10 F.R. 14743, 32 C.F.R.1945 Supp. p. 3584 following § 4004.1, and pursuant to Amendment 13 of Revised Regulation No. 3 of R.F.C. issued pursuant to said Directive 90.

2. In its application, or claim, for said profit subsidy payment, and as the basis for its computation of the amount thereof, Luer represented that it was not "affiliated as defined by Directive 90"; that it had received livestock slaughter subsidy payments from Reconstruction Finance Corporation on claims for the fiscal year ended October 31, 1945, excluding extra compensation subsidies, in the total sum of $685,-563.24; that its net sales of goods and services for said fiscal year amounted to $11,457,626.05, and that it had no net profit, but instead had suffered a net loss for said fiscal year in the amount of $94,298.73. By the terms of Directive 90, the additional subsidy was payable as follows:

"2. Subject to the provisions of Sections 3 through 9 of this directive, Reconstruction Finance Corporation is authorized and directed to make additional subsidy payments to slaughterers on account of livestock slaughtered from April 1, 1945 to October 31, 1945 (both dates inclusive) as follows:

Cattle and calves, 7 cents per hundredweight;

Sheep and lambs, 10 cents per hundredweight;

Hogs, 15 cents per hundredweight.

"3. In the case of slaughterers whose livestock subsidy payments from Reconstruction Finance Corporation, exclusive of the extra compensation provided for non-processing slaughterers, amount to less than $25,000 for the fiscal year, the payments provided for in section 2 of this directive shall be made without reference to the earnings position of the applicant.

"4. In the case of slaughterers whose livestock subsidy payments from Reconstruction Finance Corporation, computed as provided in section 3, amount to $25,000 or more for the fiscal year, the payments provided for in section 2 of this directive shall be made only if the slaughterer's profit for the fiscal year, before state and Federal income and excess profits taxes, amounts to less than one percent of his net sales of goods and services, and only to the extent necessary to return such profit to the slaughterer.

   \*     \*     \*     \*     \*     \*

"7. For the purposes of determining the payments to be made under sections 2 to 9 of this directive, 'slaughterer' includes all affiliated enterprises taken as a unit. Enterprises are affiliated if:

(a) The one owns a majority interest in the other; or

(b) The same person or group of persons owns a majority interest in both, or

(c) The one owns a majority interest in any affiliate of the other."

Luer computed its claim for the additional subsidy on the livestock slaughtered by it during the months so specified.

3. In its application aforesaid, Luer agreed as follows:

"2. The applicant agrees, as a condition to receiving payment on this claim, that he will repay on demand to RFC any or all of the payment made on this claim which is found to be improper by the Agency designated by the Stabilization Administrator to investigate the propriety of these payments."

4. On April 12, 1946, R.F.C. preliminarily approved the application, and made payment to Luer of the $35,257.86 claimed, subject to the above quoted provisions for repayment, and also subject to R.F.C.'s own right to review and recapture improper payments set forth in its Revised Regulation No. 3, § 7003.9(d, e), April 9, 1945, 10 F.R. 4241, 8073 and 11154. These latter provisions, to wit, § 7003.9(d, e), were as follows:

"(d) *Terms.* Preliminary approval and payment of claims shall not constitute final acceptance of the validity or amount of the claim. On a finding that the claim is invalid or defective, Reconstruction Finance Corporation shall have the right to require restitution of any payment or any part thereof. Any sums found to be due to Reconstruction Finance Corporation shall be deductible against any accrued or subsequent claim for any payment by Reconstruction Finance Corporation to the person.

"(e) *Right to declare claims invalid.* Reconstruction Finance Corporation shall have the right to declare invalid, in whole or in part, any claim which does not meet the requirements of this part." 32 C.F.R.1945 Supp. pp. 3622–3623.

5. On January 8, 1946, the Stabilization Administrator designated the Office of Price Administration as the agency to investigate the propriety of the special profit subsidy payments under Directive 90, and the designation and function of making such investigation was accepted by the Price Administrator by letter to the Stabilization Administrator dated January 17, 1946. This function was so held when Luer made its application to R.F.C. for such Directive 90 payment on February 20, 1946.

6. Thereafter, on December 12, 1946, this review function of the Price Administrator was transferred by the President to

the Administrator and personnel of the Office of Temporary Controls (sometimes called "O.T.C." herein) by Executive Order 9809, §§ 1, 2 and 11, 50 U.S.C.A.Appendix, § 601 note, 11 F.R. 14281, 3 C.F.R.1946 Supp. p. 185, and it continued in O.T.C. until April 23, 1947.

7. On January 20, 1947, the Office of Temporary Controls found that Luer was ineligible for any part of the said $35,257.-86 subsidy payment for the reason stated in its letter to Luer dated March 5, 1947, that Luer Packing Company and Luer Canning Company were affiliated enterprises as defined in § 7 of Directive 90, that their combined profits for the year ended October 31, 1945, amounted to $185,915.64 which exceeded 1% of their combined net sales of goods and services for said year, exclusive of transactions between them, to wit, $12,-215,402.57, and accordingly that Luer was ineligible for any part of the $35,257.86 additional subsidy payment under §§ 2–9 of Directive 90.

8. This finding and ruling of O.T.C. was communicated to R.F.C., and by letter on January 27, 1947, R.F.C. demanded repayment by Luer of the $35,257.86 with interest thereon at the rate of 4% per annum from the date of payment, April 12, 1946, based on such finding and ruling. Luer protested the ruling and demand, but its protest was overruled on March 5, 1947, by O.T.C.

9. On April 23, 1947, by Executive Order 9841 § 202(c), 50 U.S.C.A.Appendix, § 601 note, the subsidy functions of O.T.C. were transferred to the Reconstruction Finance Corporation, and R.F.C. itself on May 28, 1947, found and ruled, in affirmation of O.T.C's ruling, that Luer was ineligible for the additional subsidy and must repay the $35,257.86 to R.F.C. On June 25, 1947, Luer wrote R.F.C. that it was "unwilling to refund this money without an order from the courts."

10. The rulings and demands for payment by O.T.C. and R.F.C. were "orders" within the meaning of §§ 203–204 of the Emergency Price Control Act of 1942, 56 Stat. 31–32, Title 50 U.S.C.A.Appendix, §§ 923–924, and exclusive jurisdiction to review Luer's grievance, based on any unsuccessful protest by it, was vested in the Emergency Court of Appeals by said Act.

11. Luer did not pursue administrative procedure after June 25, 1947, for relief from these orders; and did not appeal to the Emergency Court of Appeals from the above findings, rulings and orders of O.T.C. and R.F.C. Such findings and orders are now final, and were never reviewable in this Court.

12. The Government, in its First Cause of Action in the Complaint in this case, seeks recovery of the $35,257.86, with appropriate interest, on the above facts. Luer sought to avoid the effect of such facts by alleging in its Answer that Luer Packing Company was in fact not an "affiliated enterprise" within the meaning of § 7 of Directive 90. But this fact has been conclusively settled to the contrary by Luer's failure to appeal its alleged grievance to the Emergency Court of Appeals from the findings and orders aforesaid.

13. The facts set forth in the plaintiff's First Cause of Action are true; and based thereon, the Court has reached the following—

Conclusions of Law

I. There is no genuine issue as to any material fact under the First Cause of Action stated in the plaintiff's complaint; and the plaintiff is entitled to judgment thereon as a matter of law.

II. Luer's allegations of fact stricken from its Answer to the Government's First Cause of Action are irrelevant and immaterial, and present no defense thereto.

III. The Government is entitled to summary judgment against Luer Packing Company for the sum of $35,257.86 and to interest thereon at the rate of 4% per annum to date from April 12, 1946, together with the costs of this action.